**Morton H. HALPERIN, Plaintiff,**

v.

**NATIONAL SECURITY COUNCIL et al., Defendants.**

**Civ. A. No. 75–0675.**

United States District Court,
District of Columbia,
Civil Division.

May 18, 1978.

---

Mark H. Lynch, American Civil Liberties Union Foundation, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., Barbara Allen Babcock, Asst. U. S. Atty., Lynne K. Zusman, Dept. of Justice, Washington, D. C., for defendants.

### MEMORANDUM

OBERDORFER, District Judge.

Plaintiff, a former official of the National Security Council (NSC), brought this action under the Freedom of Information Act [1] against NSC and named defendants to compel public release of two lists of NSC documents.

One of the lists whose release is sought is a compilation of the number and exact title of each National Security Study Memoranda (NSSM) issued since January 20, 1969. The other is a similar compilation with respect to National Security Divisional Memoranda (NSDM).

The plaintiff served at NSC when it originated this system of Presidential decision-making by memorandum and had a major role in developing it. The primary function of these memoranda is to gather information and recommendations for the President of the United States on current foreign policy and national defense issues and to record and communicate the President's decision to responsible officials. Prior to filing this action plaintiff had requested defendants to furnish to him a list of the titles of memoranda prepared during and subsequent to his tenure at NSC. No lists had been prepared contemporaneously with the memoranda. In response to the request, however, NSC prepared such lists and, then, perceiving security considerations with respect to them, classified each as "Secret," pursuant to Executive Order number 11652,

1. 5 U.S.C. § 552 (1970 and Supp. V 1975). (Hereinafter FOIA.)

dated March 8, 1972.[2] In addition, some of the individual titles on the lists were also classified as "Secret."

Defendants advised plaintiff that release of the lists, and especially the individually classified titles, would reveal sensitive information as to the timing and focus of United States foreign policy, which could "reasonably be expected to cause serious damage to the national security." Accordingly, defendants refused to release the lists so classified. Plaintiff appealed this decision administratively, which appeal was denied by Henry Kissinger, then Assistant to the President for National Security Affairs. Plaintiff then initiated this action. He seeks in this suit production of the two lists, *qua* lists, and not the underlying memoranda.

Defendants have moved for summary judgment, asserting that there are no material facts in dispute and that the lists are specifically exempted in full from disclosure, unclassified titles included, by §§ 552(b)(1) and (b)(5) of FOIA. 5 U.S.C. § 552(b) exempts from release matters that are:

(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

.    .    .    .    .

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency

.  .  . .

Plaintiff in turn has moved for partial summary judgment, asserting that:

1. these titles are not part of the deliberative process, but rather represent final agency determinations on either the subject to be studied or the conclusions to be drawn from the studies, and thus are not within the scope of the (b)(5) exemption, and

2. the titles on the two lists which are not individually classified are not within the (b)(1) exemption and must be released pursuant to the directive of the last paragraph of § 552(b):

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

Plaintiff has also moved for a release of the lists to him under a protective order to enable him to frame his arguments regarding the releasability of the unclassified titles and the lack of proper classification of the titles which are individually classified. Plaintiff asserts that he is an expert in national security and suggests that the Court avail itself of his expertise as to whether disclosure of the disputed titles could reasonably be expected to cause damage to national security.

Plaintiff has further moved for an *in camera* hearing so that he can furnish to the Court his informed opinion thus developed about the effect of the release of the lists on United States foreign policy and defense interests, without violating the "Secret" classification of the lists.

The Court is of the opinion that both lists, including, as they do, references to both classified and unclassified titles, are within the (b)(1) exemption of FOIA and that the lists as such are fully exempt from disclosure. Accordingly, only the (b)(1) exemption issue will be discussed.

In support of their summary judgment motion, filed in July 1976, defendants offered affidavits by Jeanne Davis, the Staff Secretary of the NSC, Philip Habib, the Under Secretary of State for Political Affairs, and Richard Lehman, Deputy Director of Intelligence for the CIA. Each of these officials stated reasons for considering the lists to be sensitive and each expressed the opinion that disclosure of the lists would be harmful to the foreign policy

---

2. Executive Order number 11652 states that: [t]he test for assigning "Secret" classification shall be whether its unauthorized disclosure

could reasonably be expected to cause serious damage to the national security.

**50**

and national defense interests of the United States.

For example, by affidavit of July 1975, Ms. Davis stated in support of her conclusion that release of the lists could reasonably be expected to cause serious damage to the national security that the lists would, *inter alia* :

1. reveal, at any given time, the flow of foreign policy thinking and areas of interest, concern, and attention at the very highest level of Government of the United States,

2. indicate those policy matters on which a difference of opinion existed at high levels, and

3. identify the individual documents which would be of greatest interest to a foreign government, thereby enabling it to concentrate its intelligence gathering process.

In addition, with respect to the individual unclassified titles included on the lists, Davis stated by affidavits of November 1975 and February 1976 that release of these titles "could reasonably be expected to damage our national security." [3]  As justification for this conclusion, Davis stated in her November 13, 1975 affidavit that:

> Access to the unclassified *titles* in their totality would  .  .  .  enable a foreign intelligence analyst to identify the kinds of issues of grave concern to the United States and the way in which this government reacts to world events, and also to gain unique insights into the method by which issues of this kind are identified, studied and resolved by the President.

Habib and Lehman later added several additional justifications for the withholding of the full contents of the two lists, including the unclassified titles. Habib stated by affidavit of July 1, 1976, that the timing and sequence of the titles would have significant intelligence value to foreign powers. Lehman stated by affidavit of June 30, 1976, that the lists would indicate to a foreign intelligence analyst that the United States had likely not formulated a position on a given issue, and that even an unclassified title on the list could lead to rumors, "whispering campaigns," and even fraudulent memoranda which, because of the classification of the memoranda themselves, would be almost impossible for the United States to refute.

More recently, on the suggestion of the Court, Dr. Zbigniew Brzezinski, Assistant to the President for National Security Affairs, has reviewed the two lists of titles to determine whether time and events had altered these earlier conclusions regarding classification of the lists in full. By affidavit of December 8, 1977, Dr. Brzezinski restated many of the points previously made by Davis, Habib, and Lehman in support of the classification decision. Dr. Brzezinski added that in his opinion:

> disclosure of these lists would provide other countries either ally or potential adversary, with valuable information and insight pertaining to the *focus* and *timing* of key U. S. foreign policy concerns. [Emphasis added.] *Id.* at p. 3.

Dr. Brzezinski concluded "after a thorough substantive reexamination of the two lists" that some of the previously classified titles could be (and were) declassified, that the lists as such meet the standard for "Secret" classification, that they are:

> properly classified at the appropriate classification level commensurate with the expected damage which would result should the two lists be disclosed,

and that

> even with the passage of time, the release of the lists of NSSM and NSDM titles still could, as of this date, reasonably be expected to cause serious damage to the national security. Brzezinski affidavit at pp. 2, 4.

█  There is and can be no issue of material fact about the procedure used to classify the two lists, or about the expertise and responsibility of Ms. Davis and Messrs. Habib, Lehman, and Brzezinski with respect to

---

**3.** The Court notes that this representation would justify a "Confidential" but not a "Secret" classification under Executive Order number 11652.

United States foreign policy. Nor can there be any material issue of fact as to what their opinion is: The disclosure plaintiff requests may reasonably be expected to cause serious damage to the national security. That opinion, if reasonable, is a proper basis for a classification of "Secret." Documents so classified are exempt from the release requirements of FOIA.

Plaintiff contends, nevertheless, that there is an issue of material fact about the reasonableness of the conclusion of these responsible officials and therefore about the reasonableness and propriety of the classification of the lists and their exemption from release. In order to join issue plaintiff presses for an opportunity to examine the lists and the underlying documents *in camera*. After that examination plaintiff would furnish the Court with his expert opinion on the prospect of danger to United States foreign policy and national defense from the disclosure he seeks. In support of this request he offers his own impressive credentials as a scholar and actor in the field of foreign policy and national security and offers, after examination of the documents, to show to the Court flaws in the reasons given by the several incumbents for their opinions and classifications. For example, he argues, a foreign power drawing conclusions from the information evident from the lists would be misleading itself because the President makes many relevant decisions outside the NSC memorandum system.

Plaintiff does not challenge the expertise of Dr. Brzezinski and his predecessors nor does plaintiff suggest that the incumbents who made the decisions did so corruptly, maliciously, or thoughtlessly. He does not draw an issue of specific fact but rather offers only his own opinion that the classification decisions at issue were mistaken as a matter of policy.

█ Although the Court is here reviewing the defendants' FOIA exemption claim *de novo*, their classification decision under-

lying that claim is entitled to substantial weight. Nothing in this record or plaintiff's submissions justifies the substitution of this Court's judgment or the informed judgment of plaintiff for that of the officials constitutionally responsible for the conduct of United States foreign policy as to the proper classification of the two lists. *See New York Times Co. v. United States*, 403 U.S. 713, 727–730, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (Stewart, J., concurring). On the strength of defendants' sufficient description of the total effect of release of all of the titles that are not individually classified, as well as the description of the titles that are individually classified, the Court is of the opinion that there is more than sufficient basis for the classification of the lists to justify their exemption by operation of § 552(b)(1). As Dr. Brzezinski has stated, the lists as such provide insight pertaining to the "focus and timing of key U. S. foreign policy concerns." Thus, the lists apparently show by number and by the sequence in which titles are listed the subject matter of significant U. S. foreign policy decisions at the Presidential level. Release of the lists, even after masking the classified titles and the numbers of the unclassified ones would still make available a document which would describe and list those decisions sequentially. It seems obvious that such a list would be a valuable instrument in the hands of unfriendly intelligence experts skilled in simple extrapolation and other analytical devices. Accordingly, the Court concludes that the concerns of the officials who oppose disclosure are plausible and fully justified by the face of the record.

█ This Court also concludes that no useful purpose would be served by an *in camera* review of the lists. The good faith of defendants is not questioned. The Court is "satisfied that proper procedures have been followed, and that by its sufficient description the contested document[s] logically [fall] into the category of the exemption indicated." [4] The pleadings and affidavits fully articulate the facts and considera-

---

4. *Weissman v. CIA*, 184 U.S.App.D.C. 117, 565 F.2d 692 (1977), as amended by order of April 4, 1977.

tions underlying defendants' classification decision. Accordingly, there is no occasion for the Court to exercise its discretion to examine these classified lists *in camera.*[5]

In reaching this conclusion the Court has carefully considered plaintiff's claim that there is a reasonably segregable portion of these lists which can be released. However, although defendants have conceded that damage to the national security could not reasonably be expected if only a small number of certain individual titles were released, their claim for exemption under (b)(1) is based on the total effect of all of the unclassified titles and not the sensitivity of any one (or more) of them individually.

The affidavits of Ms. Davis and Mr. Lehman plausibly identify potential damage to the national security that could be caused by release of the *unclassified* titles "in their totality." Thus, Ms. Davis concluded that such release "could reasonably be expected to damage our national security." This conclusion is persuasively corroborated by Dr. Brzezinski's recent re-determination that the two lists (including, by necessary implication, the unclassified titles) would afford valuable information and insight pertaining to the timing and the focus of key United States foreign policy concerns.

The Court concludes that the defendants have framed their claimed exemption as narrowly as is required by FOIA. There is no reasonable way for the Court to slice the list thin enough to eliminate the national security hazard and still leave a "list" as such for production. The Court further concludes that it could not better perform this impossible task by examination of the lists *in camera* (with or without the advice of plaintiff). Accordingly, the Court has determined that the lists are reasonably classified in full, unclassified titles included,

and that they are therefore exempt from release. An order to this effect accompanies this memorandum.[6]

---

5. *See Weissman v. CIA, Id.*; *Bell v. United States*, 563 F.2d 484 (1st Cir., 1977).

6. This decision is, however, without prejudice to any future claim by plaintiff for access to any unclassified documents now in existence, or any unclassified documents that may come into existence, which list the unclassified titles of the NSSMs and NSDMs in "scrambled" sequence and in edited form, for which defendants could not justify a "Secret" or "Confidential" classification. Such editing and "scrambling" is, of course, beyond the function of the Court under FOIA. *See* 5 U.S.C. § 552(a)(4)(B).